UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  CIVIL ACTION NO.
CTC COMMUNICATIONS CORP.,    \*
               Plaintiff(s)    \*     05 11160 RCL
vs.    \*     **COMPLAINT**
                     \*
CAMBEX CORPORATION,    \*
               \*
               Defendant(s)    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  MAGISTRATE JUDGE _____

The Plaintiff, CTC Communications Corp., by its attorneys COHN & DUSSI, LLC, as and for its Complaint herein alleges as follows:

### THE PARTIES

1.  The Plaintiff, CTC COMMUNICATIONS CORP. (hereinafter the "Plaintiff"), is a corporation duly organized by law having a usual place of business at 115 Second Avenue, Waltham, Middlesex County, Massachusetts.

2.  The Defendant, CAMBEX CORPORATION (hereinafter the "Defendant"), is a corporation having a usual place of business at 360 Second Avenue, Waltham, Middlesex County, Massachusetts.

### JURISDICTION

3.  This Court has jurisdiction over this claim under 28 U.S.C. Section 1331, as the Defendant's liability arises under a tariff filed with the Federal Communications Commission and Massachusetts Department of Telecommunications and Energy (hereinafter collectively the "F.C.C.").

1

## COUNT I
### (Breach of Customer Service Agreement)

4. The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 3 above with the same full force and effect as if expressly set forth herein.

5. At all times relevant to this action, the Plaintiff provided telephone service pursuant to Massachusetts state tariffs and FCC Tariff No. 3 (hereinafter the "Tariffs").

6. On or about October 8, 1998, the Defendant executed and delivered to the Plaintiff a Customer Service Agreement (hereinafter the "Agreement") pursuant to which the Defendant agreed to pay to the Plaintiff all amounts due together with interest, costs and attorneys' fees in connection with the Defendant's purchase of local exchange services from the Plaintiff. A true and accurate copy of said Agreement is attached hereto as Exhibit "A" and by this reference specifically incorporated herein.

7. The specific terms of the Agreement provides for the assessment of a termination charge in the event that the Agreement is terminated early.

8. The Defendant has breached its contract with the Plaintiff as a result of its failure to make payment to the Plaintiff on all amounts due under said Agreement and owes the Plaintiff the principal sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37).

9. Based upon the breach and early termination of the Agreement, the Defendant owes the Plaintiff the total sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37), together with interest from June 12, 2003, on or before which date

demand for payment was duly made, plus costs and attorneys' fees.

## COUNT II
### (for Services Rendered)

10. The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 9 above with the same full force and effect as if expressly set forth herein.

11. The Defendant owes the Plaintiff the total sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37) for services rendered by the Plaintiff to the Defendant together with interest thereon from June 12, 2003, on or before which date demand for payment was duly made, plus costs and attorneys' fees.

## COUNT III
### (for Unjust Enrichment)

12. The Plaintiff reavers, realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 11 above.

13. The Plaintiff provided telephone services to the Defendant for an agreed upon price, and the Defendant has failed, refused, neglected and continues to refuse to make payment to the Plaintiff in consideration for the services provided by Plaintiff to the Defendant.

14. As a result of the foregoing, the Defendant has been unjustly enriched in the sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37), which sum the Plaintiff is entitled to recover.

15. As a result of this unjust enrichment, the Defendant owes the Plaintiff the sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37).

**WHEREFORE**, the Plaintiff, CTC Communications, prays that Judgment enter as follows:

1. Enter judgment against the Defendant, Cambex Corporation, and in favor of the Plaintiff, in the sum of Fourteen Thousand Nine Hundred Fifty Three and 37/100 Dollars ($14,953.37), together with interest from June 12, 2003 on or before which date demand for payment was duly made;

2. Award the Plaintiff, CTC Communications, its costs and disbursements for prosecuting this action, including reasonable attorneys' fees, in connection with the Defendant, Cambex Corporation; and

3. Grant the Plaintiff, CTC Communications, such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,
CTC Communications Corp.,
By its attorneys,
Cohn & Dussi, LLC,

Date: 5/26/05

John J. Dussi, Esq. BBO# 546355
25 Burlington Mall Road, 6th Floor
Burlington, MA 01803
(781) 494-0200

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
CTC Communications Corp

**DEFENDANTS**
Conduix Corporation

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John G. Dugan, Esq., 35 Burlington Mall Rd
Cann + Dugan, LLC   Burlington MA 01803
(781) 491-????

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |  | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  |  |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State Statutes |
|  |  / ☐ 550 Civil Rights |  |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1331
Brief description of cause:
Plaintiff seeks to recover monies owed for services rendered.

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 14,953.27    CHECK YES only if demanded in complaint:  JURY DEMAND:  ☐ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  5/26/05
SIGNATURE OF ATTORNEY OF RECORD  John Dugan

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) CTC Communications Corp. v. Combx Corporation

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   - [x] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   - [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   - [ ] IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   - [ ] V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [x]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [x]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [x]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    John J. Dussi
ADDRESS    Cohn + Dussi, LLC, 25 Burlington Mall Rd, Burlington MA 01803
TELEPHONE NO.   (781) 494-0200

(CategoryForm.wpd - 5/2/05)

# EXHIBIT "A"

# ACS COMMUNICATIONS

## Customer Service Agreement

### Installation Information
Jambex Corporation
360 Second Ave
Waltham, MA 02154

| Contact: Arthur Ziskin ZISKEND | Phone: (781) 890-6000 |
|---|---|
| EMail: | Fax: 781-890-6000 |

### Billing Information
Same

| Contact: Jim Normoyle | Phone: 781 890 6000 274 |
|---|---|
| EMail: | Fax: 781 890 2899 |

### Credit Information

[X] Corporation  [ ] Partnership  [ ] Proprietorship  [ ] Tax Exempt (Attach Proof)  [ ] Other

Nature of Business: mfg. computer storage devices
Years in Business: 30   SIC: 3573   Tax ID: 04 244 2959   Duns #: 04-590-8217

### Ownership Information (Required for Partnerships, Proprietorships and Small Businesses)
| Name | Address | Phone | SS# |
|---|---|---|---|
| | | | |

### Reference Information (List 3 Major Trade References and Your Bank)
| Trade Name | City, State | Phone | Account # |
|---|---|---|---|
| SEE Attached | | | |

Bank: US Trust         Contact: Brian Tully

### Billing Options

[ ] IntelliBILL   [X] Call Detail     [ ] Reports Option I   [ ] Package Option I   Term: months
[X] IntelliVIEW   [ ] Suppress Detail [ ] Reports Option II  [X] Package Option II
[ ] Corp. Acct. Billing [ ] Suppress Bill [ ] Reports Option III [ ] Package Option III

### Office Use Only
App. Code:
User ID:
Date:
Account #:
DT1:
DT2:

**Comments**

### Billing Telephone Numbers

| 781-890-6000 | 781-890-6263 | 781-890-2899 | |
| 781-890-3806 | 781-890-9776 | | |
| 781-890-6016 | 781-890-6021 | | |
| 781-890-3602 | 781-890-6174 | | |

### Letter of Authorization

The Customer's signature below confirms that for each of the phone numbers listed above, a) Customer selects CTC Communications Corp. (CTC) as its primary provider of [X] local exchange service [ ] intralata toll service [ ] long distance service; b) that Customer designates CTC as its agent for purposes of changing primary service provider(s); that Customer understands that only one service provider can be designated as the primary carrier for each of the services selected above; d) the Customer understands that the selection of a new intraLATA toll or interLATA Service provider may result in the imposition of a charge by Customer's local exchange company for changing service provider(s). The indivudal's signature below further confirms that the individual is the customer of record or the individual otherwise authorized to select the service provider(s) for each of the telephone numbers listed herein. This agreement extends to CTC the authority to notify Bell Atlantic that CTC Communications Corp. (CTC) will become our [ ] Local [ ] Long Distance service provider for all telephone numbers, locations and underlying services associated with the billing telephone number(s) (BTN's) listed above. This agreement also extends CTC the authority to act on our behalf for the purpose of obtaining an inventory of all line numbers billed to designated BTNs, obtaining carrier information, customer codes and billing address information for all Company locations. The Company understands that CTC is required to assume the liability for any service contracts between Bell Atlantic and the Company and, the Company agrees to enter into an agreement with CTC which passes through any Bell Atlantic liabilities to the Company. Additionally CTC is authorized to perform any investigation necessary to determine the credit worthiness of the company. The Terms and Conditions set forth on the back of this agreement or provided separately are an integral part of this agreement.

| Authorized Signature | CTC Account Executive | Manager |
|---|---|---|
| ARTHUR L. ZISKEND   10/08/98 | KURT NORMAN   10/08/98 | |
| Name and Title   Date | Name   Date | |

Scope of Agreement   Service under the Agreement is provided by CTC Communication and its affiliates (hereinafter referred to as "CTC"). Intrastate telecommunications rates and terms are detailed in the applicable CTC tariffs on file at the local state regulatory agency that regulates telecommunications services in the state (hereinafter referred to as "Regulatory Agency"). CTC's interstate telecommunications rates and terms are detailed in its tariffs on file at the Federal Communication Commission (hereinafter referred to as "FCC"). Amendments to the above tariffs at the Regulatory Agency or the FCC shall affect the rates applicable to this Agreement. The terms of this Agreement are subject to restrictions in the CTC's tariffs, which are incorporated herein. Terms and conditions for non-regulated services are contained in the applicable service orders.

Payments and Financial Responsibility   Customer agrees to pay CTC by the due date on the CTC billing statement. A late payment charge of 1.5% per month, unless otherwise prescribed by law, will be applied to the Customer's unpaid balance after the due date. The late payment charge will be included in the next month's bill. CTC shall hold Customer for all charges incurred as a result of theft or unauthorized use of CTC services and equipment.

Qualified Services   Services under the Agreement include CTC local, long distance, and enhanced services, as outlined in the tariff. This program excludes those services not deemed resellable by the respective Regulatory Agency or not identified in CTC's tariffs.

Term Commitment   Customer agrees to the term commitment level indicated on the first page of this Agreement.

Termination   In addition to its rights at law and in equity, CTC may terminate this agreement and immediately invalidate all billing card numbers issued and/or block access to long distance calls through CTC's network hereunder if: 1) Customer fails to make payment when due for any long distance services rendered from CTC; 2) Customer becomes insolvent or invokes as a debtor any laws relation to the relief of debtors, or has such laws invoked against it; 3) Customer becomes involved in any liquidation or termination of its business, adjudged bankrupt, or is involved in any assignment for the benefit of creditors.
For Month to Month Agreements   This agreement may be terminated by Customer. Termination, to be effective, requires payment in full of all outstanding charges and 60 day written notice to CTC, 360 Second Avenue, Waltham, MA 02154.
For Term Agreements   This agreement may be terminated by Customer within the first 60 days without any early termination fees. After the initial 60 day period, Customer may terminate this agreement by paying all outstanding charges as well as an early termination charge. The early termination charge will be equal to 25% of Customer's average monthly invoice multiplied by the number of months remaining in the term.

Warranty   CTC makes no warranty, express or implied, as to the description, completeness, quality, merchantability or fitness for a particular purpose of any service obtained pursuant to this Agreement. CTC's liability for failure to perform any duty arising out of this Agreement is limited by its tariffs filed with the Regulatory Agency and the FCC or the amount of service purchased by the Customer, whichever is less. CTC shall not be liable to the Customer or any third party for (I) any lost revenues, profits, business opportunities, or any other indirect or consequential damages, or (ii) any personal injury arising from or incurred as a result of failure
of services and/or equipment provided under this Agreement; (iii) any liability arising from or related to agreements or the relationship between Customer and it's previous carriers(s). PROHIBITED UNDER APPLICABLE LAW CTC MAKES NO WARRANTIES EXPRESSED OR IMPLIED, EXCEPT AS STATED IN THIS AGREEMENT.

Changes to Customer Agreement   This Agreement comprises the total understanding of the terms and conditions between CTC and the Customer. Any changes or alternative terms and conditions to the Agreement proposed by the Customer must be approved in writing by the CTC State Director subsequent to Customer signing and entering into the offered terms of this Agreement. Any such additional terms requested by the Customer require CTC approval at the corporate offices.

Use of Services   The Customer agrees to use the services in the manner for which they are intended and to refrain from using these services in a way that would hinder the ability of CTC to maintain its facilities and provide service to other Customers. Customer is absolutely prohibited from reselling these services or using the service to compete with CTC. Customer is prohibited under this Agreement to conduct any illegal activity through CTC's service. CTC may cancel service upon leaning of any illegal activity by Customer.

Equipment at Termination of Service   For those Customers that obtain equipment with CTC service, there will be a termination charge in the event all or a portion of the service agreed to under this Agreement is terminated prior to the conclusion of the stated term of the Agreement. This equipment termination charge is in addition to the early termination charge in on the first page of this Agreement pertaining to "Commitment". The equipment termination charge shall be equal to the monthly recurring equipment charge multiplied by the number of months remaining in the term.

Right of Entry   CTC reserves the right to enter the Customer's premises with reasonable notice to Customer ion order to perform its obligations under this Agreement. Reasonable notice of entry will not be required to the Customer for instances of emergencies or Customer's default under this Agreement. CTC shall not have any liability to Customer for entry on Customer premises. Assumption Under Limited Circumstances   In order to facilitate CTC's provision of service to Customer hereunder, CTC may, at the express option of CTC, only under certain limited circumstances and subject to the following conditions assume Customer's obligations under existing contractual arrangements with Customer's Local Exchange Carrier which required Customer to commit to a minimum term and/or volume of purchase ("Assumption").

CTC shall participate in an Assumption if and only if (I) and Assumption is permissible under applicable law and regulation, (II) under existing contractual or other agreements between Customer and the Local Exchange Carrier and (ii) Customers existing contractual arrangement with the Local Exchange Carrier meets certain CTC-defined criteria which are subject to change by CTC at any time. Furthermore, Customer accepts and agrees that, upon an Assumption by CTC, in addition to the terms and conditions contained herein, Customer shall automatically be liable to CTC for the satisfaction of such terms of its contractual arrangement (including without limitation, minimum committed volume amounts, term length and any other related terms and conditions) with the Local Exchange Carrier that are assumed by CTC.

Billing   Services are provided and invoices are issued on a monthly basis. Invoices shall be payable upon receipt. Customer shall notify CTC within 30 days of any dispute with regard to any invoice, or said invoice shall be deemed to be correct and binding. Interest on any unpaid balance will accrue at the rate of 1.5% per month (not to exceed the highest rate allowed by law) starting 30 days following the date of the invoice. In addition, invoices not paid in 30 days will not be eligible for cash rebates or volume discounts.

Rates   CTC may revise rates for service from time-to-time to reflect variations in the rates published by the local exchange carriers or the underlying carriers. For term agreements, CTC agrees not to change the rates charged to customer for the duration of the term as long as the customers invoices are kept current.

Liability   Customer acknowledges that CTC, the underlying carrier and CTC's authorized dealer assume no liability for calls not completed due to circumstances beyond its control. CTC and the underlying carrier are not liable for any act or omission of any other company or companies furnishing a portion of any service to Customer and shall be indemnified and held harmless by the Customer against all claims for libel, slander, infringement or copyright or unauthorized use of any trademark, trade name, or service mark arising out of the material, data, information, or other content transmitted over CTC's long distance carrier's facilities. Further, CTC and underlying carrier's liability shall not be liable for, and the Customer indemnifies and holds it harmless from, any and all loss claims, demands, suits or other actions of whatever nature, or any liability caused or claimed to have been caused directly or indirectly by CTC or the underlying carrier. CTC and the underlying carrier's liability to Customer for any claim arising out of the provision of a tariffed service shall in no event exceed the liability of the underlying carrier to a customer under the tariffs on file with the state or federal agencies which have regulatory authority over the services which are the subject of this agreement. UNLESS PRO

Miscellaneous   The Agreement shall be governed by and construed in accordance with the substantive and procedural laws and practices of the State of Massachusetts. Venue of any action or suit under this Agreement shall be in any Court serving Middlesex County, Massachusetts, and Customer shall be subject to the personal jurisdiction of the State of Massachusetts. If a dispute arises and CTC refers this Agreement to an attorney for collection, Customer agrees to pay all costs of collection including interest, court costs, fees, and reasonable attorney's fees. The obligations of the parties under this agreement that by their nature continue beyond the expiration of this agreement shall survive any termination or cancellation of this agreement. The failure of either party at any time to enforce any right or remedy available to it under this agreement with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

Calling Card   For those Customers requesting calling cards, the following applies in addition to all the other terms and conditions of this agreement. CTC will supply Customer such billing card numbers as Customer requests. Telephone calls made using such billing card numbers will be billed by CTC to Customer. Customer understands that CTC may need to change the billing card numbers provided to the Customer and Customer agrees that CTC may change such number upon (30) days prior written notice to Customer. Once CTC provides billing card numbers to Customer, Customer will be solely responsible for distribution of such numbers to Customer employees, agents or other holders of Customer choice. Except as otherwise provided herein, responsibility for the billing card numbers will pass to Customer upon CTC's issuance of the numbers to the Customer. CTC will not know that a billing card number has been compromised, or that a Customer account with CTC has been closed, unless Customer so notifies CTC. Therefore, CTC and Customer agree that until CTC receives such notification, CTC will treat all calls made using the billing card numbers in question as valid calls. Not withstanding anything to the contrary contained herein, every billing card number issued to Customer by CTC will be subject to CTC or underlying carrier's standard fraud control procedures, and individual billing card numbers may be deactivated if such numbers fall within CTC fraud control parameters or CTC suspects the billing card number has been compromised. In order to properly allocate the risk of unauthorized use of the billing card numbers created by Customer responsibility for, and release of, such numbers: I) Customer agrees to be liable for all charges to the billing card numbers issued hereunder upon CTC's issuance of the involved numbers to the Customer and prior to Customer notification to CTC that the billing card number is question should be invalidated; II) Customer agrees that all charges to the billing card number in question should be invalidated shall be conclusively and irrefutably presumed to be authorized charges. Should any other person utilize the card or its number with or without Customer authorization, Customer will be liable for all charges incurred by that person. The billing card numbers provided to Customer are the property of CTC and will remain the property of CTC. Customer shall not use such numbers, nor attempt to authorize or license any other person or entity to use such numbers except Customer employees, agents or other holders of Customer choice as contemplated by this agreement. Should CTC revoke a card or if it expires, Customer must return it to CTC should it be requested. Customer may not use the card or its number after it has expired or after it has been revoked. Customer agrees that any additional billing card numbers issued on it's account are to be used in a manner consistent with this agreement.